Fleming v. Graham.

JOHN FLEMING, by Next Friend, Respondent, v. WILLIAM GRAHAM, Appellant.

**St. Louis Court of Appeals, February 5, 1889.**

1. **Mortgage: CONDITION BROKEN.** Where a chattel mortgage of store fixtures, dry goods and groceries provides that "in case of a sale or disposal, or attempt to sell or dispose of said property, or removal or attempt to remove the same from the premises, number 3922 Sophia avenue, St. Louis, Missouri, or of an unreasonable depreciation in value thereof, the said William Graham (the mortgagee) may take possession," etc., and the mortgagor proceeds to sell the goods in the usual course of trade for about eleven months, replenishing the stock from time to time, the right of the mortgagee to take possession becomes complete under the terms of the mortgage.

2. **Mortgage: REPLENISHED STOCK.** If a mortgagee, in taking possession for condition broken, seize at the time goods which were added to the stock by the mortgagor after the making of the mortgage, he will be liable to the mortgagor, in replevin, to the extent of such additional stock taken.

*Per Thompson, J., Dissenting:*

3. **Mortgage: CONTRACT: INTERPRETATION.** In every contract, the manifest intent of the parties must prevail, whatever may be the words employed. Where the defendant had sold a stock of goods to the plaintiff and rented to him the store in which they were, with the manifest intention in both parties that the plaintiff should carry on the business by disposing of the goods in the usual course of trade, and had taken a chattel mortgage to secure the purchase money unpaid, the two transactions must be taken together as parts of an entire contract, and one part cannot be so interpreted as to destroy the other.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*James E. Hereford,* for the appellant.

A written contract, plain and unambiguous, cannot be varied, explained or qualified by any testimony.

2 Pars. on Cont. ( 3 Ed.) p. 61 ; Addison on Cont. 841 ; *County of Johnson v. Woods*, 84 Mo. 489. Nothing can be suffered to overthrow the plain meaning of terms. Bish. on Contracts, sec. 412 ; *Bishop v. White*, 68 Me. 104. Every word must be construed,and the intention of the parties gathered from the writing itself. Bish. on Contracts, sec. 384 ; *Redhoeffer v. Leathe*, 15 Mo. App. 12. Where parties deliberately put engagements into writing without uncertainty as to the object and extent of such obligation, it is conclusively presumed that the whole engagement and the exact manner and extent of the undertaking was reduced to writing. 1 Greenl. on Ev., sec. 275 ; *Fruin v. Railway*, 89 Mo. 397. Nothing not even the acts of the parties, can be suffered to overthrow the plain meaning of terms. Bish. on Cont., sec. 412 ; *Bishop v. White*, 68 Me. 104 ; *Lodge v. Samuels*, 50 Mo. 204 ; *Thompson v. Foerstel*, 10 Mo. App. 290. The contract should have been strictly construed against the maker. Bish. on Cont., sec. 414 ; 1 Chit. on Cont. ( 11 Am. Ed.) 136 ; *Duryea v. New York*, 62 N. Y. 592. The court erred in refusing to grant defendant's ( appellant ) third instruction, because new goods brought into the store were not subject to the mortgage, and it must follow, as a matter of course, that where mortgaged goods were sold and replaced by goods not subject to the lien, the security must have depreciated and the mortgagor was entitled to possession.

*Edmond A. B. Garesché*, for the respondent.

The circumstances under which the contract is made may be looked to in aid of the construction ; and the acts of the parties to the instrument are entitled to great weight. *Dobbins v. Edmonds*, 18 Mo. App. 307. The appellant clearly had an equitable lien on the

goods purchased with the proceeds of those originally mortgaged and equity would afford him a remedy to subject them to the payment of his debt.   Jones on Chat. Mort., sec. 170.   The evidence shows that the new goods purchased with the proceeds of those originally mortgaged were added to the mortgaged stock and the mortgagee was entitled to take them all, the new as well as the old, under his mortgage and his security was therefore not impaired.   Jones on Chat. Mort., secs. 481, 482.   The object of construction is to ascertain what the parties intended by the terms and expressions used in a contract and the courts will so far as the rules of law will permit, give effect to that intention.   *Barlow v. Scott*, 24 N. Y. 40; *Gunnison v. Brancroft*, 11 Vt. 493. Courts in the construction of contracts look to the language employed and the surrounding ·circumstances. *Dobbins v. Edmonds*, 18 Mo. App. 307 ; *Nash v. Fowne*, 5 Wall ( U. S.) 689 ; *Ricker v. Fairbanks*, 40 Me. 43. It appeared affirmatively from the record that this stock of groceries was purchased for the express purpose, and upon the express understanding that the respondent was to continue the business from which the appellant wished to retire.

ROMBAUER, **P. J.**, delivered the opinion of the court.

The plaintiff, a minor, purchased from defendant a lot of store fixtures, dry goods and groceries, October 1, 1886.   He paid no cash but gave in payment his promissory note for $229.54, payable on or before two years after date, and secured by a chattel mortgage on the property bought.   The mortgage contains the following condition :

" In case of a sale or disposal, or attempt to sell or dispose of said property, or removal· or · attempt to remove the same from the premises, ·number 3922 Sophia

avenue, St. Louis, Missouri, or of an unreasonabe depreciation in value thereof, the said Wm. Graham may take possession," etc.

The plaintiff thereupon began to dispose of the goods in the usual course of trade, until June 7, 1887, replenishing the stock from time to time. On the last-named day the defendant, who was landlord of the premises also, took possession of the store and its contents under the mortgage for condition broken, claiming that his security had been impaired. The plaintiff thereupon retook the property, by instituting the present action of replevin, and upon its trial recovered judgment for possession of the entire property and damages. Hence this appeal.

The chattel mortgage is in the usual form. When it was offered in evidence the defendant's counsel claimed, that by its terms the plaintiff had no right to remove or sell any of the stock of groceries purchased by him from the premises, whereupon the court made the following ruling:

"The construction to be put upon that chattel mortgage is, in regard to the disposition of the goods, that the purchaser cannot dispose of the whole stock in a lump, just as it was sold by Graham to Fleming. Mr. Fleming would not have the right to sell it outright and allow some one else to take it and remove it, but it would be a very strained construction to put upon a contract of that kind, that he could not be allowed to sell the kegs of beer, or any other articles in the line of groceries that were perishable until the two years were out."

The court adhered to this ruling in its instructions to the jury, and the correctness of that view is the only substantial question presented for our consideration upon this appeal.

It is not pretended that the parties made an additional contract, either cotemporaneous or subsequent,

affecting the defendant's rights in the premises, nor is it claimed that there was a waiver of any of the conditions of the mortgage. There was no evidence whatever to support either theory. The case was tried and submitted to the jury solely upon the construction put upon the condition of the mortgage by the court, and if that construction was incorrect the judgment cannot stand.

That a written contract, plain and unambiguous, cannot be varied, explained or qualified by any testimony, and that such testimony is not admissible to overthrow the plain meaning of written terms, is fundamental law which need not be discussed. That part of the goods mortgaged were perishable can make no difference. The question is not whether the contract made by the parties was wise or improvident; the sole question is what that contract was. That question is conclusively answered by the express terms of the contract itself. In the absence of fraud or mutual mistake, the parties are conclusively held to have meant what they said, and any evidence of intention *dehors* the contract is inadmissible.

Since it stands admitted that the mortgagor did sell and dispose of part of the property mortgaged, it necessarily stands admitted that the mortgagee might lawfully enter for condition broken. The disposal of the goods was also necessarily a depreciation in the value of the mortgaged property, since the mortgagee had no *legal* lien on the goods bought in lieu of the goods sold.

The aid of surrounding circumstances, and of the conduct of the parties, are available for purposes of construing a contract only in case of latent ambiguities in some of its terms. That proposition is fully and clearly stated in *St. Louis Gas Light Co. v. City of St. Louis*, 46 Mo. 121. Here are no such ambiguities.

We might add, that the construction put upon the contract by the court, is not only erroneous because a

departure from its plain terms, but is not a whit more sensible than the construction which it seeks to avoid. If the sale provided against in the condition was a sale in lump only, the mortgagee might well sell all the property piecemeal, and thus destroy the mortgagee's security entirely, which was clearly not within the contemplation of the parties.

As some question arises upon the record, whether or not the mortgagee took more property than was actually covered by his mortgage, and since for property thus taken, he may be held liable in this proceeding, we will remand the cause for trial.

Reversed and remanded.     Judge BIGGS concurs. Judge THOMPSON dissents.

THOMPSON, J., delivered a dissenting opinion.

I do not understand the facts of this case as my associates do. The defendant William Graham was keeping a small corner grocery in St. Louis, and, for some reason known to himself, desired to go out of business. He accordingly entered into an arrangement with the plaintiff, then and at the time of the trial of this action a minor, whereby he sold the stock and fixtures to him for the sum of $229.54, for which he took the plaintiff's promissory note at two years, secured by a chattel mortgage upon the fixtures and stock. The mortgage contained a list of the articles covered by it, and does not purport to cover any after-acquired property, or goods bought to replenish such of the goods as should be sold in the course of trade. Nevertheless it appears from the evidence of both parties that it was their intention that the plaintiff should carry on the business as the defendant had done, selling the goods in the course of trade, and keeping the stock replenished. To facilitate this purpose, the defendant loaned the plaintiff one hundred dollars, in money, without security, which the plaintiff, subsequently repaid. The mortgage contained

the following clause : "Upon taking possession of said property, or any part thereof, either in case of default or as above provided, the said William Graham or his legal representatives, may proceed to sell the same, or any part thereof, at public auction to the highest bidder for cash, at the aforesaid premises, in the city of St. Louis and state of Missouri, having first given five days public notice of the time, terms and place of sale, and property to be sold, by written notice through the mail to the party executing this mortgage."

The plaintiff carried on the business according to the understanding of the parties for about eleven months, paying rent to the defendant, who, it seems, was the owner of the premises. One day the defendant came into the store and collected the usual monthly install-ment of rent, and had some altercation with the plaintiff and his father ; and, on the next day with the aid of a constable, he took possession of the store with everything in it and turned the plaintiff out. It does not appear that he took possession under any judicial process. The only ground on which the defendant took possession was that the stock was becoming depreciated so as to imperil his security. The plaintiff thereupon immedi-ately sued out this writ of replevin before a justice of the peace.

Such proceedings were had that, in a trial in the circuit court, the plaintiff recovered the judgment from which this appeal is prosecuted.

Much evidence was offered on both sides as to whether the stock had unreasonably depreciated in the hands of the plaintiff. The defendant's evidence tended somewhat to show that there had been a depreciation, and the plaintiff's evidence tended to show that the stock had considerably increased in value. Some forty dollars' worth of stock originally covered by the mort-gage consisted of dry goods and notions, and the evi-dence undisputably showed that this had been allowed

to run down, the plaintiff not caring to keep up that line of goods. The court refused instructions tendered by the defendant, declaring : ( 1 ) That the plaintiff could not recover if the defendant took possession in good faith, *believing* that the stock had unreasonably depreciated ; or ( 2 ) if the plaintiff sold or attempted to sell the goods or any part thereof, and the defendant took possession for a breach of the mortgage ; or ( 3 ) if there had been an unreasonable depreciation in the goods covered by the mortgage, and advising the jury that it did not cover further purchases.

The court submitted the case to the jury on the following instruction : " The court instructs the jury as follows : If after the execution of the chattel mortgage in evidence Fleming suffered the stock of merchandise to run down and failed to replenish it, and in consequence thereof the value of the goods covered by the chattel mortgage became materially depreciated, then the defendant Graham had a right under the terms of the mortgage to take possession of the goods in question. But the mere fact that the plaintiff Fleming sold from the stock of merchandise in the usual course of trade would not authorize Graham to take possession of the goods, provided Fleming replenished the stock in the regular course of trade and kept it up substantially as full and valuable as when he gave the chattel mortgage. If, therefore, you believe from the evidence that, at the time Graham took possession of the goods the stock in trade was substantially as full and valuable as at the date of the mortgage, your verdict should be for the plaintiff. But if you believe from the evidence that at the time Graham took possession the stock had run down and had not been replenished, so that there was a material depreciation in the value of the stock in trade at that time your verdict should be for the defendant." This instruction seems to have put the real controversy fairly to the jury.

My difficulty in accepting the conclusion of my associates is that it ignores the fundamental purpose of the transaction, which manifestly was that the plaintiff should take possession of the store and stock of goods, and deal with the goods in trade as he did. The mortgage was only a part of the contract; the contract of sale was the other part. Both must be construed together as one transaction, which they were; and one part of the contract cannot be so interpreted as to defeat the other. While it is true that effect must be given, where possible, to all the clauses of the contract, yet a contract cannot be so interpreted as to make nonsense, and in order to avoid this result words may be read differently from their ordinary meaning—as where the word "east" in a deed is made to read "west,"—and subordinate clauses may, if necessary, be discharged. A faithful interpretation endeavors to arrive at the real intention of the parties, and will even depart from the letter to reach this intention where it otherwise plainly appears. *Qui hæret in littera hæret in cortice.* "The letter killeth." Did this young man buy of the defendant a stock of perishable goods on a credit of two years in order to hold them as a warehouse-man, paying rent to the defendant for the warehouse in the meantime? Was this intention manifest by the fact that he immediately began to sell the goods in the course of trade and continued to deal with them in this way for eleven months without objection from the defendant, paying him rent for the store in the meantime? Is it shown by the testimony of the defendant that the *only* ground of his taking possession under the mortgage was that the goods had unreasonably depreciated? Or was it a mere charity extended by the defendant to the plaintiff? Or was it a sham sale, intended to effect some collateral purpose, the defendant holding the goods by a string which he could pull at pleasure? It is submitted that none of these conclusions can be adopted in the absence

of evidence, and that no principle of interpretation can be adopted which will turn a transaction, in itself apparently sensible, into complete contradiction and nonsense.

I think that the judgment ought to be affirmed.